# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HAMIMI YATA and JASMIN ZUKANCIC, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 17 cv 3503 |
| | ) Judge Sharon Johnson Coleman |
| BDJ TRUCKING CO. and SENAD MUJKIC, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Hamimi Yata and Jasmin Zukancic filed a Third Amended Complaint[1] against defendants BDJ Trucking Company and Senad Mujkic (collectively "BDJ"), alleging violations of the Truth-In-Leasing Act, 49 U.S.C. §14704(a)(2), the Illinois Wage Payment Collection Act ("The Wage Act"), 820 ILCS 115/9, and Illinois common law breach of contract. Defendants move to dismiss [29] for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs also move for leave to amend the complaint [34]. This Court allowed the parties to brief the motions simultaneously. For the reasons stated herein the Court denies defendants' motion to dismiss and grants plaintiffs' motion for leave to file a Fourth Amended Complaint.

**Background**

The following facts are taken as true for purposes of ruling on this motion. Plaintiffs Hamimi Yata and Jasmin Zukancic each worked as truck drivers for BDJ Trucking Company. BDJ is a transportation carrier licensed with the U.S. Department of Transportation and headquartered in

---

[1] The Complaint is a putative class complaint, though the Court addresses it for purposes of this motion without reference to the putative class. The third named plaintiff, Darius Butts, settled his claims with defendants and was dismissed from the case.

Niles, Illinois. Senad Mujkic is Chief Executive Officer and owner of BDJ. Both Yata and Zukancic are Illinois residents.

Yata worked for BDJ from approximately April 2013 to December 2013 and from January 2015 until April 2016. Zukancic worked for BDJ from approximately July 2013 to March 2016. Some drivers drove BDJ-owned trucks and some, including Yata and Zukancic, were owner-operator drivers who drove their own semi-tractors. For line-haul work, BDJ agreed to pay owner-operator drivers by the mile. For local work, BDJ paid the owner-operator drivers by the hour. BDJ paid Yata and Zukancic as owner-operators.

Yata performed line-haul work from April to December of 2013, January to May of 2015, and August 2015 to April 2016. During these periods he spent 20-35% of his work time in Illinois. Between May and August 2015 Yata worked exclusively in Illinois doing local delivery.

From July through December of 2013 and from May through August of 2015, Zukancic performed local delivery work for BDJ exclusively in Illinois. From approximately September 2015 until March 2016, Zukancic performed line-haul work for BDJ. When performing line-haul work, Zukancic spent approximately 20-35% of his work time in Illinois. For line-haul work, Zukancic usually picked up a load of cargo in Illinois, dropped it off in a nearby state, and returned it to Illinois, all within a period of less than twelve hours. For one six-month period in 2014, Zukancic made trips to Tennessee, returning to Illinois every other day. When performing line-haul work for BDJ, Zukancic spent approximately 20-30% of his work time in Illinois.

BDJ required Yata and Zukancic, as well as many of its owner-operator drivers, to sign a contract identical to, or substantially similar to, the "Service Agreements" attached to the complaint. (Dkt. 26-1, Ex. A). BDJ also required its owner-operator drivers, including Yata and Zukancic, to sign a "Lease Agreement." (Dkt. 26-1, Ex. B). Under these agreements, the owner-operator drivers leased their equipment (a semi-truck tractor) to BDJ for a certain per-mile rate of pay for line-haul

work. Yata's agreement with BDJ promised a rate of $1.70 per practical mile. Sometimes BDJ paid Yata as little as $1.34 per mile. For local delivery, BDJ paid Yata and Zukancic $55 per hour.

During many weeks, BDJ deducted significant amounts from Yata and Zukancic's wages or final compensation. For example, BDJ deducted $150 each week for thirteen weeks to deposit into an escrow account. BDJ said that it maintained the escrow account to pay for damages that its drivers, including Yata and Zukancic, might cause to BDJ's trucks, trailers, or freight. BDJ also made additional deductions to certain drivers' paychecks for various fines for traffic tickets, safety violations, and other occurrences. BDJ made additional deductions from certain drivers' wages to reimburse BDJ for "occupational accident" insurance that BDJ claimed to have purchased on behalf of the drivers. BDJ never paid any interest to the drivers' on the escrow account. BDJ also did not return the full deductions to Yata and Zukancic.

The complaint alleges that BDJ did not disclose in its agreements with Yata and Zukancic that it would be taking the deductions from their wages for an escrow account or occupational accident insurance. That complaint alleges that these deductions were neither required by law nor for the benefit of the drivers; nor were they in response to a valid wage deduction order. According to the complaint, BDJ owner Mujkic was aware of and approved the deductions. Neither Yata nor Zukancic gave express written consent for the deductions.

Plaintiffs allege that BDJ controlled the drivers through the agreements, including the leased equipment or semi-truck tractors. BDJ also controlled the plaintiffs by requiring that they follow company rules and procedures. Plaintiffs were also required to travel to BDJ's office every week to deliver their daily logs and fuel receipts in addition to collecting their paychecks.

Plaintiffs filed the Third Amended Complaint, alleging five Counts: Count I on behalf of the purported class of owner-operator drivers alleges violations of the Truth in Leasing Act regulations for taking deductions without disclosure in the agreements, for failing to pay interest on the escrow

account, and for failing to pay the mileage rates included in the agreements; Count II and III on behalf of Yata and Zukacic asserts a violations of the Illinois Wage Payment and Collection Act for unlawful deductions and failure to pay all owed wages; Count IV on behalf of the purported class of owner-operator drivers alleges breach of contract for failure to adhere to the agreements. Count V was brought solely by former plaintiff Darius Butts, who has settled this claim. Defendants move to dismiss the Third Amended Complaint entirely. [2]

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face and raising the right to relief above speculation. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

Defendants move to dismiss the complaint, arguing that plaintiffs' claims under the Wage Act and common law breach of contract are preempted by the federal Truth-in-Leasing Act. Defendants further argue that plaintiffs are agents of BDJ and therefore the Truth-in-Leasing Act does not apply to them and they are not employees within the meaning of the Wage Act. Preemption is an affirmative defense and thus would have been more properly addressed in a motion for judgment on the pleadings. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). The Court will first address whether plaintiffs have adequately alleged their claims before turning to the question of preemption.

---

[2] The Court notes a discrepancy in defendants' pleading. The opening paragraph of their motion to dismiss the Third Amended Complaint states that defendants "move this court in accordance with Fed. R. Civ. P. 12(b)(6) to dismiss count 1 of Plaintiffs' Complaint." (Dkt. 29). However, their memorandum of law in support of the motion argues for dismissal of the entire complaint.

*1. Truth-in-Leasing Act Regulations*

Defendants assert that the allegations in the Third Amended Complaint show that plaintiffs were agents of BDJ and thus are excluded from protection under the Truth-in-Leasing Act. The federal Truth-in-Leasing regulations, 49 C.F.R. Part 376 govern the "lease and interchange of vehicles." The objectives of the regulations are:

> to promote truth-in-leasing – a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; … to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and … to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank (In re Arctic Express Inc.)*, 636 F.3d 781, 795 (6th Cir. 2011) (internal quotation marks, alterations omitted).

Here, BDJ does not dispute that it is a motor carrier. As alleged in the complaint, BDJ is an "authorized carrier" under the regulations, which define the term as "[a] person or persons authorized to engage in the transportation of property as a motor carrier…." §376.2. BDJ also does not dispute for purposes of the instant motion that it had agreements with Yata and Zukancic that stipulated that each would drive their own semi-truck tractor to make deliveries for BDJ. Instead, BDJ argues that Yata and Zukancic are "agents" of BDJ and, thus, they are excluded from the protections of the act. *See* 49 C.F.R. § 376.26 ("Exemption for leases between authorized carriers and their agents").

The regulations do not define "agent" in this context. Neither this Court's own research nor any authority presented by the parties defines "agent". However, it is clear from the history of the regulations, their stated purpose, and the litigation that has followed since their promulgation that owner-operator drivers such as the plaintiffs in this case are precisely the intended beneficiaries of the protection in the Truth-in-Leasing regulations. Historically, "[m]otor carriers had attempted to immunize themselves from the negligence of the drivers who operated their vehicles by making

5

them all nominally 'independent contractors.'" *White v. Excalibur Ins. Co.*, 599 F.2d 50, 52 (5th Cir. 1979) (collecting cases). "Because under the [Federal Motor Carrier Safety Regulation] interstate motor carriers have both a legal right and duty to control leased vehicles operated for their benefit, the regulations create a statutory employee relationship between the employees of the owner-lessors and the lessee-carriers." *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 38–39 (Tex. App. 2002). The regulations themselves suggest this interpretation as well because they only apply when an owner leases equipment to a carrier. *See Shimko v. Jeff Wagner Trucking LLC*, 2013 WL 10075919, *4 (W.D. Wis. June 28, 2013). "The regulations define a 'lease' as an 'arrangement in which the owner *grants the use of equipment*, with or without driver, for a specified period to an authorized carrier for use in the regulation transportation of property.'" *Id.* (quoting 49 C.F.R. § 376.2(e)).

Here, plaintiffs have alleged they are owner-operator drivers who leased their equipment (semi-truck tractors) to BDJ for use in the transportation of goods. They further allege that BDJ violated the Truth-in-Leasing regulations by failing to comply with the disclosure and escrow lease requirements of the regulations, 49 C.F.R. § 376.12(b)-(e). Accordingly, this Court finds they have stated a claim for violations of the Truth-in-Leasing regulations.

*2. The Wage Act*

Next, defendants argue that plaintiffs fail to state a claim under the Wage Act. To state a claim under the Wage Act, plaintiffs must allege that (1) they had an employment agreement with the employer that required the payment of wages or final compensation, and (2) that the defendants were employers under the Wage Act. *Watts v. ADDO Management, LLC, et al.*, 2018 IL App (1st) 170201, ¶19 (1st Dist. 2018) (citing *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1067, 293 Ill. Dec. 170, 827 N.E.2d 1051 (2005)); 820 ILCS 115/2, 3, 5 (West 2002). To plead the existence of an employment agreement, plaintiffs need only allege that "an entity paid a worker according to a demonstrable formula for work done" such that it raises "an inference that the entity

6

and the worker had an employment agreement that embodied the formula." *Landers-Scelfo*, 356 Ill. App. 3d at 1067. BDJ asserts that Yata and Zukancic are not "employees" subject to the Wage Act. Because the Wage Act only applies to "employers and employees *in this State*," 820 ILCS 115/1, and Yata and Zukancic did not perform a sufficient amount of work in Illinois, they are not covered by the Act.

The Wage Act defines "employee" as "any individual permitted to work by an employer in an occupation." 820 ILCS 115/2. The statute also carves out an exclusion from the definition of employee. The term "employee" does not include any individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; *and*
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; *and*
>
> (3) who is in an independently established trade, occupation, profession or business.

*Id.* (emphasis added). Here, defendants do not argue that the plaintiffs meet this statutory exclusion, but instead argue that they do not perform sufficient work in Illinois to be subject to the statute.

The Illinois Supreme Court has yet to decide the issue of what means to be an employee "in this State." Thus, this Court will review status of the issue in the Seventh Circuit. In *Glass v. Kemper Corp.*, 133 F.3d 999 (7th Cir. 1998), the Seventh Circuit affirmed the dismissal of the plaintiff's claim under the Wage Act where the plaintiff had never been an Illinois resident and he had performed all his work for the defendant Illinois company in Spain. 133 F.3d at 1000. The court in *Glass* stated: "[The Wage Act's] evident purpose is to protect employees in Illinois from being stiffed by their employers; to this end it imposes heavy sanctions on employers who fail to pay wages that have accrued. It is inconceivable that the framers of the statute meant to extend its protection to employees abroad, who would usually not even be U.S. citizens, let alone residents of Illinois." *Id.*

7

The Seventh Circuit again had the opportunity to address this issue in *Adams v. Catrambone*, 359 F.3d 858 (7th Cir. 2004). In that case, the court reversed the dismissal of a claim under the Wage Act brought by a nonresident of Illinois who worked in Illinois. 359 F.3d at 862. The plaintiff was a Michigan resident, who worked full-time for an Illinois company. *Id.* at 861. The Seventh Circuit, interpreting *Glass*, anticipated "that the Supreme Court of Illinois would hold that the Wage Act protects nonresidents of Illinois who perform work in that state for an in-state employer." *Id.* at 862.

In *Vendetti v. Compass Environmental, Inc.*, No. 06 C 3556, 2006 WL 3694852, *1 (N.D. Ill. Dec. 14, 2006) (Aspen, J.), the district court considered the scope of the Wage Act. In *Vendetti*, the plaintiff was a Georgia resident, who alleged that he performed most of his work in Georgia for an Illinois company. The court reviewed *Glass* and *Adams*, observing that "[b]oth decisions focused on the geographic location in which the employee had performed work." *Id.* at *2. The court found that it was "bound to interpret the Wage Act to apply only where an employee has done at least some work for an Illinois employer while physically present in the state of Illinois." *Id.* In finding that Vendetti was not an employee the court distinguished his situation from the plaintiff in *Adams*, who had performed *most* of his work in Illinois. *Id.* The court further reasoned that its decision did not depend solely on the relative quantity of work that Vendetti performed in Illinois, but that the very nature of the dispute rendered the Wage Act inapplicable. *Id.* Vendetti effectively pled himself out of a claim under the Wage Act by alleging that he agreed to work for the Chicago-based company on the condition that he not be required to relocate from his office in Georgia. *Id.*

In *Baxi v. Ennis Knupp & Associates, Inc.*, No. 10 C 6346, 2011 WL 3898034, *1 (N.D. Ill. Sept. 2, 2011)(Dow, J.), the district court denied a motion to dismiss a Wage Act claim, finding that the plaintiff, who had moved to India to open a satellite office for an Illinois company, had sufficiently alleged that he performed work in Illinois. The district court reached this conclusion in part from the plaintiff's arguments that "the overwhelming majority of the work Baxi did for [Ennis

8

Knupp & Associates] in his many years of employment was in Illinois." *Id.* at *14. The court reasoned that "[i]f the facts adduced in discovery indisputably show that Plaintiff did not perform sufficient work in Illinois to warrant coverage under the Wage Act, [the defendant] may raise this argument on summary judgment." *Id.*

In *Cohan et al. v. Medline Industries, Inc.*, 170 F.Supp.3d 1162 (N.D. Ill. 2016) (Blakey, J.), the district court granted summary judgment in favor of the defendant on the basis that the plaintiffs had not performed sufficient work in Illinois. *Cohan* involved salespeople who spent at most a few days a year in Illinois for training rather than performing their jobs. *Id.* at 1175.

The most recent case to discuss the quantum of work that must be performed in Illinois for a plaintiff to come under the umbrella of the Wage Act is *Watts v. ADDO Management, LLC, et al.* 2018 IL App (1st) 170201 (2018). The Illinois Appellate Court found the phrase "in this State" as it is used in the Wage Act, 820 ILCS 115/1, ambiguous. The appellate court then turned to the relevant agency's interpretation for guidance. Having reviewed the Illinois Department of Labor's regulations and their amendments, the court found it "clear that the Wage Act's application is not limited to any specific quantum of work performed in Illinois, but, in fact, may apply in certain circumstances even where all of the work is performed outside of this state." *Id.* at ¶ 21. The court held that it was improper for the trial court to rely on a calculation of the percentage of work performed by the plaintiffs in Illinois as grounds for dismissal. *Id.*

Here, Yata and Zukancic allege that they performed work in Illinois sufficient to survive dismissal. The complaint alleges that they would pick loads up for transport from BDJ's facility in Illinois and return there each day or every other day when performing line-haul work. They further allege that during periods of time when they were driving local, they worked exclusively in Illinois. If discovery leads to a different conclusion with regards to the amount of work required to be performed in this State, then BDJ may raise it on summary judgment. No court of binding authority

9

has set forth a minimum quantum of work in Illinois to qualify as an employee under the Wage Act. Thus, this Court finds the claim adequately stated.

*3. Preemption*

Finally, the Court turns to BDJ's affirmative defense that plaintiffs' Wage Act and contract claims are preempted by the Truth-in-Leasing regulations. "Preemption can take on three different forms: express preemption, field preemption, and conflict preemption." *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). BDJ only argues field and conflict preemption.

"In all preemption cases, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 576 (7th Cir. 2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009)). "Under the doctrine of field preemption, however, a state law is preempted if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Wigod*, 673 F.3d at 576 (internal citations omitted). BDJ argues that the Truth-in-Leasing regulations preempt plaintiffs' state law claims because the Department of Transportation has taken control of the transportation industry and the Truth-in-Leasing regulations cover the leasing of equipment by motor carriers.

BDJ does not develop its field preemption argument and, thus, this Court may consider it waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived…"). BDJ combines its field preemption argument with its conflict preemption argument such that the two are indistinguishable. Moreover, the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §14704(a), pursuant to which plaintiffs are seeking relief in Count I, contains a "savings clause" that provides for cumulative remedies. *See* 49 U.S.C. § 13103 ("Except as otherwise provided

10

in this part, the remedies provided under this part are in addition to remedies existing under another law or common law."). Elsewhere in that part are the express limitations on state law, of which contracting for deductions or wages are not among the limitations. *See* 49 U.S.C. § 14501(c)(1) (a state may not enact a regulation or law relating to "a price, route, or service of any motor carrier"). This Court therefore finds that Congress contemplated state regulation on the same subject and there is no field preemption. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1048 (7th Cir. 2013) (holding that where the federal statute is silent on preempting state laws that, in that case, regulate the interstate use of automatic dialing systems, Congress did not intent to preempt state regulation of the same).

This Court also finds that the Truth-in-Leasing regulations do not conflict with the IWPCA or common law breach of contract. "The Supreme Court has 'found implied conflict pre-emption where' either (1) 'it is impossible for a private party to comply with both state and federal requirements,' or (2) 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Wigod*, 673 F.3d at 577-78 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)).

Under the Truth-in-Leasing regulations, a motor carrier leasing equipment from an owner-operator must have a written lease agreement. *See* 49 C.F.R. §376.12. The lease must specifically address chargeback items. The regulations state that: "The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge." 49 C.F.R. §376.12(h). The regulations also provide that deductions relating to insurance and escrow payments must be in the lease. 49 C.F.R. §376.12(i)-(k). The IWPCA contains more specific requirements regarding deductions: "deductions

11

by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made…". 820 ILCS 115/9.

BDJ argues that the IWPCA conflicts directly with the Truth-in-Leasing regulations, relating to deductions or chargeback items, because the IWPCA prohibits certain deductions. This Court finds no reason why BDJ cannot comply with both the regulations and the IWPCA, especially in light of subsection (4) that allows deductions with the express written consent of the employee. The Truth-in-Leasing regulations similarly require any deductions contemplated must be included in a written lease. Thus, in this Court's view it is neither impossible for BDJ to comply with both the Truth-in-Leasing regulations and the IWPCA nor does the IWPCA stand as an obstacle to BDJ compliance with the federal law. The only court to address this issue also found no conflict preemption, though this Court recognizes that decision is not binding on this Court and issued after briefing of this matter. *See Johnson v. Daikon Logistics*, No. 16-cv-06776, 2018 WL 1519157, *6-7 (N.D. Ill. Mar. 28, 2018) (Wood, J.).

The Truth-in-Leasing regulations also do not preempt the state common law doctrine regarding contracts that requires signatories to a contract to comply with the terms. *See Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 14, 61 N.E.3d 1155, 1159, *appeal denied sub nom. Burkhart v. Wolf Motors of Naperville, Inc.*, 77 N.E.3d 81 (Ill. 2017) (stating that elements of a breach of contract claim in Illinois, requiring performance of the contract terms by the plaintiff to assert the claim and by the defendant to defeat the claim). Indeed, the Truth-in-Leasing regulations also require that the "lease provisions shall be adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12. Accordingly, this Court finds that the

Truth-in-Leasing regulations do not preempt plaintiffs' claims under the IWPCA and common law breach of contract.

*4. Motion to Amend the Complaint*

Plaintiffs move to amend the complaint to clarify their allegations that they are employees solely for purposes of the IWPCA and not agents under the Truth-in-Leasing regulations. The proposed amended complaint also removes allegations relating to dismissed plaintiff Darius Butts. BDJ opposes the amendment, claiming it will be unfairly prejudicial and that amending the Truth-in-Leasing claims is futile.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its complaint with the district court's leave "when justice so requires." Fed.R.Civ.P. 15(a)(2). This Court may deny leave to file an amended complaint in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny a motion to amend is purely within the discretion of the district court. *J.D. Marshall Int'l Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991).

Defendants contend that plaintiffs have been allowed three amended complaints already and should not be allowed a fourth. When the prejudice is apparent, the Court may deny the amendment. *Feldman v. American Memorial Life Ins.*, 196 F.3d 783, 793 (7th Cir. 1999). However, it is not enough that the opposing party is prejudiced, but the amendment must cause them undue prejudice. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 794 (7th Cir. 1999). Delay may be a factor in finding undue prejudice, because the longer the delay, the greater possibility that the court will find that granting the amendment will cause prejudice. *Perrian v. O'Grady*, 958 F.2d 192, 194-5 (7th Cir. 1992); *see Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). This is exemplified in

cases where plaintiffs request to amend their complaints at the eve of trial or after discovery has closed. *Perrian*, 958 F.2d at 195.

The parties here are still in the midst of discovery. Moreover, as discussed above, this Court is denying defendants' motion to dismiss the Third Amended Complaint and the proposed Fourth Amended Complaint only clarifies claims already alleged and does not add new claims. Since this Court has already found that the Third Amended Complaint states a claim, BDJ's arguments that the Fourth Amended Complaint would not survive a motion to dismiss are unpersuasive. Accordingly, this Court grants plaintiffs' motion for leave to amend.

**Conclusion**

Based on the foregoing, this Court denies defendants' Motion to Dismiss [29] and grants plaintiffs' Motion for Leave to Amend [34]. Plaintiffs' are directed to file separately their Fourth Amended Complaint within 3 days of entry of this Order. Defendants are directed to Answer the Fourth Amended Complaint 21 days thereafter.

IT IS SO ORDERED.

Date: 7/5/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge