# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HAMIMI YATA AND JASMIN ZUKANCIC, individually and on behalf of others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 17-cv-03503<br>)<br>) Judge Sharon Johnson Coleman |
| BDJ TRUCKING CO. and SENAD MUJKIC, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Hamimi Yata and Jasmin Zukancic filed this suit against Defendants BDJ Trucking Co. and Senad Mujkic for violating the Truth in Leasing Act ("TLA") and the Illinois Wage Payment and Collection Act. Plaintiffs move to certify the TLA claim as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). For the reasons stated herein, Plaintiffs' motion [68] is granted.

**Background**

BDJ Trucking Co., Inc. ("BDJ") is a transportation carrier that employs and contracts with drivers to transport its customers' freight throughout the United States. It is an Illinois corporation headquartered in Niles, Illinois. Senad Mujkic is the owner and CEO of BDJ.

During the relevant time period for this lawsuit, between 2013 and 2017, BDJ employed over 50 owner-operator semi-truck drivers. All of the drivers signed an equipment lease that governed various aspects of their employment, including terms of their compensation. BDJ primarily used two versions of the equipment lease between 2013 and 2017. BDJ asked all drivers to sign version one (the "Lease Agreement"), between April 2013 and April 2017. That document is one page long and provides that Plaintiffs leased their semi-trucks to BDJ pursuant to the TLA. (Dkt. 69-5.) The Lease Agreement does not set out terms of driver compensation nor does it

1

authorize BDJ to make deductions from driver pay. BDJ also asked drivers to sign a second version of the equipment lease (the "Service Agreement"), between October 2014 and April 2017. The Service Agreement is more detailed than the Lease Agreement and includes provisions pertaining to driver pay, insurance requirements, indemnification, termination, confidentiality, among other matters. (Dkt 69-6.) The Service Agreement specified that if drivers chose to purchase occupational insurance, they will be required to pay the monthly premium. No other deduction related to occupational insurance is specified in the Service Agreement. (*Id.*) The Lease Agreement and Service Agreement are the basis of Plaintiffs' claims in this case.

Plaintiffs Yata and Zukancic worked for BDJ as owner operators at various points between 2013 and 2016, along with more than fifty other drivers. Plaintiffs allege that BDJ made several deductions from their pay and did not always pay them the promised amount. They additionally allege that BDJ paid $141 per month per driver for occupational insurance and charged each driver more than $40 in upcharges. Plaintiffs allege BDJ charged drivers an unauthorized "escrow" amount, which was not always paid back in full. Yata claims BDJ deducted $5100 in escrow from his paychecks and only repaid him $3605. Zukanic claims BDJ deducted $1500 in escrow from his paycheck and only repaid him $1478.16. Additionally, Plaintiffs allege BDJ deducted a $90 "one-time processing fee" from most drivers' paychecks, which was not mentioned in the Service Agreement nor the Lease Agreement. Plaintiffs allege that unauthorized deductions on escrow deposits, DBJ's failure to pay interest on escrow deposits, overcharges on occupational accident insurance, and unauthorized deductions for a one-time processing fee are violations of the TLA.

Plaintiffs seek to certify their TLA claim on behalf of the following class under Rule 23(b)(3):

> All individuals or entities that signed equipment leases with BDJ between April 1, 2013 and April 1, 2017.

**Legal Standard**

To be entitled to class certification, Plaintiffs must demonstrate that they satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the three alternatives set forth in Rule 23(b). *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires that a proposed class meet requirements of numerosity, typicality, commonality, and adequacy of representation. *Id.* When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also show that questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members and, relatedly, that a class action is superior to other available methods of resolving the controversy. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)).

Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (internal quotation marks and citation omitted). When factual disputes bear on matters vital to certification, the Court must receive evidence and resolve those disputes prior to certifying the class. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). Certification is proper only if, "after rigorous analysis," the Court is satisfied that Rule 23's prerequisites have been met. *Comcast Corp.*, 569 U.S. at 33. "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements but they need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811 (7th Cir. 2012) (citations omitted). The Seventh Circuit has repeatedly reiterated that the focus of class certification must be on Rule 23 and that class certification proceedings cannot be allowed to turn into a preemptive determination of the merits. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015).

**Analysis**

At the outset, the Court notes that the Plaintiffs have properly defined their proposed class. Defendants argue that the proposed class is too vague because Plaintiffs have not included a harm in the definition. Implicit in Rule 23 is the requirement that a class cannot be defined too vaguely, defined by subjective criteria, or defined in terms of success on the merits thereby creating a "fail-safe class." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-60 (7th Cir. 2015). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. In *Mullins*, the court affirmed certification of a class of consumers "who purchased Instaflex within the applicable statute of limitations of the respective Class States for personal use until the date notice is disseminated." *Id.* at 659. Although the harm was not written into the class description, the court found that it could objectively determine that the purported harm to class members was that they were defrauded by labels and marketing materials. *See id.* at 660. Here, too the purported harm is readily discernable. Plaintiffs have alleged that all class members were harmed when BDJ deducted funds from their paychecks that were not authorized in equipment leases all class members signed, in violation of the TLA. Plaintiffs have otherwise described a class that is objectively ascertainable and Defendants' arguments to the contrary are rejected.

Additionally, Defendants argue that the affidavit and its attached chart summarizing settlement statements and checks that BDJ produced for each owner-operator driver it employed should not be considered by the Court. (Dkt. 69-1.) Defendants do not argue that the summary is inaccurate, that the underlying documents are inadmissible, nor that the underlying documents were not made available to it. Rather, they argue that this type of evidence is inadmissible generally and that it is self-serving. Defendants are incorrect. A party may use a summary or chart to prove the content of voluminous writings that cannot be conveniently examined in court as long as it provides

4

the underlying documents to the opposing party at a reasonable time and place. Fed. R. Evid. 1006; *see also Coates v. Johnson & Johnson*, 756 F.2d 524, 550 (7th Cir. 1985) (holding that the trial court properly considered an affidavit from a paralegal and summary of disciplinary records because the underlying documents were available to Plaintiffs and the court found them reliable). The chart Plaintiffs attached to their motion summarizes documents pertaining to more than fifty individuals, all of which were produced by Defendants in discovery.

To the extent that Defendants argue the summary chart is inaccurate because the methodology used to calculate the amount is incorrect, that argument is rejected. The affidavit accompanying the summary chart indicated that checks labeled "escrow" were included in the summary, but other methods were also utilized to capture that amount. Benjamin Goldberg, the paralegal who summarized the documents notes that he compared settlement statements for work-related pay with the last check provided to the driver and any amount on the check above the work-related payment amount on the settlement statements was considered a repayment of escrow. (Dkt. 69-1.) This methodology is consistent with clear evidence in the record, provided by BDJ's own accounting manager. Aldijana Miljkovic, a BDJ employee responsible for operations and accounting during the proposed class period, testified in her deposition that the only reason a driver's last check would have more money than work-related pay is escrow reimbursement. (Dkt. 75-1 at 28). Accordingly, Defendants' argument is meritless.

Moreover, the chart being self-serving does not preclude its admission so long as it accurately summarizes the underlying documents. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (Noting that various forms of testimony are self-serving, but "the term 'selfserving' must not be used to denigrate perfectly admissible evidence" through which a party presents its side of the story). The summary chart clearly is an admissible form of evidence and can be considered by the Court.

**1. Rule 23(a)**

*a. Numerosity*

Plaintiffs have demonstrated that their proposed classes are sufficiently numerous for class treatment. Numerosity requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D.Ill. 2009). Here, Plaintiffs have presented evidence that the proposed classes contain at least fifty members. (Dkt. 68-1.) Joinder of more than fifty plaintiffs would certainly be impracticable. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (holding that a proposed class of 40 was "a sufficiently large group to satisfy Rule 23(a)"); *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14 C 739, 2017 WL 4164170, at *5 (N.D. Ill. Sept. 20, 2017) (Tharp, J.) ("Although there is no 'magic number' of class members for numerosity purposes, when a class reaches forty, joinder is typically considered impracticable").

Defendants argue a number of times throughout their brief that Plaintiffs have not established that all proposed class members signed the Service Agreement and Lease Agreement in addition to some unknown number who may have signed a third version of the agreement (the "Third Agreement"). (Dkt. 75 at 10-11, 14.) Defendants claim that this is a reason that Plaintiffs cannot meet the numerosity standard. BDJ's document production showed that only three drivers signed the Third Agreement. (Dkt. 69 at 2.) BDJ's attorney confirmed that it had produced all agreements signed by owner-operator drivers in its possession, yet Defendants now claim that other unknown drivers may have signed the Third Agreement. Defendants base their argument on the questionable deposition testimony of Aldijana Miljkovic, who testified that all owner-operator drivers signed the Third Agreement and that BDJ stored all copies of agreements signed by drivers in their driver file. (Dkt. 69-4 at 20.) Senad Mujkic also testified that BDJ's practice was to keep the

agreements signed by drivers in their driver file and it did not dispose of any files during the proposed class period. (Dkt. 76-1 at 65, 69.) The claims of Miljkovic are contradicted by Berina Babic, the BDJ employee responsible for maintaining driver files and ensuring every driver had an equipment lease. Babic testified that she never saw a Third Agreement in the time she worked at BDJ, from March 2014 until February 2016. (Dkt. 76-3 at 8, 11, 17-18.) Because the record shows that BDJ produced all the leases, and the production does not show that all drivers signed the Third Agreement, Miljkovic's claim is contradicted. Plaintiffs have therefore shown by a preponderance of the evidence that the Third Agreement does not apply to the overwhelming majority of class members and the only two agreements at the heart of the claims are the Service Agreement and Lease Agreement. Where, as here, a dispute concerns standard form documents signed by class members and the class is sufficiently large, numerosity is satisfied. *See Chandler v. Sw. Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (Castillo, J.) (finding Plaintiffs satisfied numerosity where the dispute concerned a standard form document and the proposed classes consisted of approximately 50 and 150 members).

Defendants' claim that Plaintiffs have not shown which drivers elected to use the group occupational insurance compared to other available options is also contradicted by the record. Plaintiff's summary chart included in their opening brief as Exhibit A identified which drivers had funds deducted from their checks for occupational accident insurance. (Dkt. 76-1.)

Accordingly, Plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a).

*b. Commonality*

Plaintiffs have also demonstrated commonality, which means the existence of "'questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (quoting Fed. R. Civ. P. 23(a)(2)). "What matters to class certification … [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution

7

of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Plaintiffs' proposed class meets this commonality requirement because the TLA claim presents common questions that will generate a common answer. Plaintiffs contend that the primary common questions for their TLA claim are: (1) whether the Lease Agreement and Service Agreement authorized BDJ's deductions for an escrow deposit; (2) whether BDJ paid interest on the escrow deposit; (3) whether BDJ charged owner-operator drivers more for occupational accident insurance than the Lease Agreement and Service Agreement allowed; and (4) whether the Lease Agreement and Service Agreement authorized BDJ's deductions for one-time processing fees. All members of Plaintiffs' proposed class are owner-operator drivers or entities who leased their equipment to BDJ for the use in transportation of goods. In doing so, they all signed the Lease Agreement, Service Agreement, or both. Thus, the answers to the above questions will determine whether BDJ was authorized by these agreements to make relevant deductions and overcharges to *all* drivers. If it was not, then the answers to these questions will also determine whether BDJ is liable to *all* owner-operator drivers under the TLA. 49 C.F.R. § 376.12. Accordingly, Plaintiffs have satisfied the commonality requirement for their TLA claim.

*c. Typicality*

Plaintiffs' claims are typical if they arise from the same event, practice, or course of action that gives rise to the claims of other class members; and the claims of the Plaintiffs and the class members are based on the same legal theory. *Keele*, 149 F.3d at 595.

Here, Plaintiffs' and the potential class members' claims arise from the same course of action of BDJ: the alleged improper deductions from their wages, failure to pay interest on escrow deductions, and overcharges on occupational insurance. The claims of Plaintiffs and the potential

8

class members also arise from the same legal theories: the alleged violations of the TLA. Accordingly, Plaintiffs have satisfied the typicality requirement.

*d. Adequacy*

The final requirement under Rule 23(a) is that the representative party will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named Plaintiffs' counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted).

Plaintiffs' attorneys appear qualified, and no apparent conflicts exist between the named Plaintiffs and the class. Additionally, Plaintiffs Yata and Zukancic have allegedly suffered the very TLA harm they contend the whole class has suffered—unauthorized escrow deductions and one-time fee deductions, lack of escrow interest payment, and overcharge of occupational insurance charges. Accordingly, Plaintiffs have satisfied the adequacy requirement.

**2. Rule 23(b)(3)**

Having determined that Plaintiffs meet Rule 23(a)'s threshold prerequisites, the Court turns to the Rule 23(b)(3) requirements. Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*a. Predominance*

"Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication."

*Messner*, 669 F.3d at 815 (quotation omitted). This requirement is met when "common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id.*

In this preliminary predominance inquiry, the Court looks "only so far as to determine whether, given the factual setting of the case, if the [Plaintiffs'] general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Costello*, 810 F.3d at 1060 (internal quotation marks and citation omitted). Predominance is a qualitative concept that determines whether "there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014). Defendants argue that Plaintiffs cannot meet this requirement because individualized issues predominate.

Here, evidence common to the class will determine liability under the TLA. All the owner-operator drivers employed by BDJ signed the Lease Agreement, Service Agreement, or both. A central inquiry to the TLA claim is whether the Lease Agreement and Service Agreement authorized BDJ's deductions for an escrow deposit and for one-time processing fees. Because all drivers signed one or both of these agreements, this inquiry can be answered on a class-wide basis. Further, the inquiry as to whether BDJ paid interest on escrow deposits to its drivers and whether it overcharged drivers for occupational insurance above what the Lease Agreement and Service Agreement authorized will also determine whether BDJ is liable under the TLA to the whole class. Thus, questions that can be answered on a class-wide basis to determine liability predominate.

Defendants argue that Plaintiffs cannot satisfy predominance because the damages analysis will be individualized. "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (citing *Wal–Mart v. Dukes*, 131 S.Ct. at 2558). Accordingly, individualized damages calculations will not prevent certification here, where common questions and factual issues regarding liability predominate.

*b. Superiority*

Finally, Plaintiffs must show that proceeding as a class action is superior to alternative methods of resolving the controversy. *See* Fed. R. Civ. P. 23(b)(3). This requirement is satisfied if "a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal citation and quotation marks omitted).

Defendants argue a class action is not superior to individual actions because the amount each class member is allegedly owed is large enough to encourage them to bring cases on their own. The average class member in this case stands to recover damages in the amount of a few thousand dollars. (Dkt. 69-1.) A couple class members are potentially owed over ten thousand dollars. (*Id.*) While the few drivers who have larger claims may be motivated to sue as individuals, many potential plaintiffs may not bring their own claims because of the generally small individual recovery. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations ... in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."). As such, Plaintiffs' claims are well-suited for class treatment.

Again, if Plaintiffs prove liability at the merits stage, the need for individualized damages determinations does not require denial of Plaintiffs' motion for class certification. *See In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014). When, as here, there are substantial common issues as to liability that outweigh the single variable of damages, the Court can devise solutions to address that problem when the time comes. *See Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008). Indeed, it is common in class actions to have a final phase when individualized proofs are submitted. *Suchanek*, 764 F.3d at 756. The Court finds it would be inefficient and unrealistic to adjudicate liability numerous times and that individualized damages claims do not

11

preclude class certification. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). The proposed TLA class meets the superiority requirement for certification under Rule 23(b)(3).

**Conclusion**

For these reasons, this Court grants Plaintiffs' motion for class certification [68].

**IT IS SO ORDERED.**

Date: 3/5/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge